UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANGLE INC., <br> Plaintiff, <br> v. <br> ARITZIA, INC., et al., <br> Defendants. | Case No. 23-cv-01196-JSW <br><br> **ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS WITHOUT PREJUDICE** <br><br> Re: Dkt. No. 42 |

Now before the Court is Defendants Aritzia, Inc., Aritzia LP, and Unites States of Aritzia, Inc.'s (collectively, "Defendants") Renewed Motion to Dismiss. The Court has considered the parties' papers, relevant legal authority, the record in this case, and oral argument. For the following reasons, the Court hereby GRANTS Defendants' motion and DISMISSES Plaintiff Tangle Inc.'s ("Tangle") Second Amended Complaint ("SAC") WITHOUT PREJUDICE.

## BACKGROUND

Tangle is a toy manufacturer and distributor incorporated in California. (SAC ¶¶ 16, 17.) Tangle holds copyrights for nine sculptural works which Tangle alleges were infringed by Defendants.[1] (SAC ¶ 16.) Each of Tangle's registered works is a kinetic sculpture made of seventeen or eighteen interlocking, 90-degree curved pieces.

//

---

[1] At oral argument, counsel for Tangle conceded that the Tangle Therapy Kinetic Sculpture (registered under number VA 1-271-045) and the Zawitz Tangle Ornamental (Flat-sided) Sculpture (registered under number VA 1-232-933) were not infringed. Counsel did not address Ornamental Sculpture No. VI, but the Court will not assume Tangle intended to concede that sculpture. (Dkt. No. 55, at 14.)

| | |
|---|---|
| Coiled Tangle (17 sections), VA 120-368 | |
| Zawitz Tangle Ornamental Sculpture No. I, VAu 35-387 | |
| Zawitz Tangle Ornamental Sculpture No. II, VAu 35-390 | |
| Zawitz Tangle Ornamental Sculpture No. III, VAu 35-389 | |
| Zawitz Tangle Ornamental Sculpture No. IV, VAu 35-392 | |
| Zawitz Tangle Ornamental Sculpture No. V, VAu 35-388 | |

| Zawitz Tangle Ornamental Sculpture No. VI, VAu 35-391 |  |  |
|---|---|---|

Tangle sells replicas of its sculptures at authorized dealers, including the Museum of Modern Art's Design Store. (SAC ¶¶ 13, 35.) Tangle also sells toy Tangle sculptures in pink chrome, as well as variations that light up, have textured pieces, or attach to key chains. (*Id.* ¶¶ 12, 33.) These toy pieces are not copyrighted.

   

Defendants are Canadian entities located in Vancouver. (*Id.* ¶¶ 18-20.) Tangle alleges that Defendants collectively own 121 apparel retail stores, 49 of which are located in the United States. (*Id.* ¶ 21.) Defendants dispute which entity owns the stores, but for ease of reference, the Court will refer to the retail stores as "Aritzia."

In Spring 2023, Aritzia began displaying chrome pink sculptures made of eighteen interlocking, 90-degree curved pieces in its storefronts. (*Id.* ¶¶ 40, 43, 59.) Defendants also featured or permitted others to feature videos and photos of the sculptures on social media. (*Id.* ¶ 41.) Plaintiff's estimation of the number of Aritzia's sculptures varies in different parts of the SAC, from "approximately 100" to "perhaps more than 300." (*Id.* ¶¶ 2, 5.)

  

Tangle claims that Aritzia's displays were recognized by the media and public as Tangle sculptures. (*Id.* ¶¶ 7-8.) Tangle alleges that Aritzia intentionally copied Tangle's protected works and used Tangle's unregistered trade dress. (*Id.* ¶¶ 49, 54.) Tangle alleges actual consumer confusion, including a social media comment in which a user described the Aritzia sculptures as "a giant Tangle toy!" (*Id.* ¶ 8.) Accordingly, Tangle brings a claim for copyright infringement in violation of 17 U.S.C. § 101, *et seq.*, and infringement of trade dress in violation of 15 U.S.C. § 1125(a).

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Tangle seeks to protect an unprotectable idea rather than protectable expression. Additionally, Defendants argue that the Court does not have personal jurisdiction over Aritzia, Inc., and they seek dismissal of Aritzia, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(2).

## ANALYSIS

### A. Legal Standard on a Motion to Dismiss.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Labels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). If the allegations are insufficient to state a claim, a court should grant leave to amend unless the court determines the pleading could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Where a party moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v.*

4

*Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff must produce sufficient admissible evidence that, if believed, would establish personal jurisdiction. *Id.*

**B.     Tangle Has Not Plausibly Alleged Copyright Infringement.**

In order to plead a claim for copyright infringement, Tangle must plausibly allege that (1) it owns a valid copyright, and (2) Defendants copied protected aspects of the copyrighted work's expression. *Rentmeester v. Nike, Inc.* 833 F.3d 1111, 1116-17 (9th Cir. 2018) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)).

Defendants argue that Tangle seeks to monopolize the idea of sculptures made of interlocking tubular shapes, and that their use of interlocking tubular art infringes Tangle's registered works only if the copying is "virtually identical." Tangle responds that it seeks protection over a combination of choices—18 interlocked, 90-degree, curved pieces in pink chrome—that together constitute protectible expression. Tangle argues that, because its sculptures may be manipulated into different positions, its copyright extends to all sculptures consisting of 18 interlocking 90-degree curved pieces, and that any variations in size, finish, or positioning are protected derivative works. According to Tangle, Aritzia's displays infringed the "core expression" embodied in the seven copyrighted works.

**1.     Tangle Has Not Adequately Alleged Valid Copyrights.**

In order to allege a valid copyright, a plaintiff must allege that the work is "original," meaning that "it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious.'" *Id.* (quoting 1 M. Nimmer & D. Nimmer, Copyright § 1.08[C][1]). Copyright does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Ideas and "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Additionally, it is a prerequisite to copyright protection that the expression be "fixed." *Kelley v. Chicago Park Dist.*,

5

635 F.3d 290, 303 (7th Cir. 2011).

Courts often struggle to locate the "faint line" between protectable expression and unprotectable ideas. *Satava*, 323 F.3d at 807; *see Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1168 (9th Cir. 1977) (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)) ("The difficulty, as we have noted, is that on this record the idea and its expression appear to be indistinguishable. There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both.").

Tangle attached copyright registrations for nine works to its SAC and alleged that *all* of Aritzia's displays infringed *all* nine works. At oral argument, Tangle stated, "if you have the 17 or 18 interlocking segments of the same size, then any configuration of them, provided that the – the embodiment can be manipulated along the same axes, yes, it – it will be infringing." (Dkt. No. 55, at 24.) Tangle conceded two of the nine alleged copyrighted works were not infringed, and it argued the "core expression" was the original three-dimensional sculpture and that the other registered sculptures were derivative works. (*See id.* at 21.) Tangle also contended that any works with chrome finish are derivative works protected by the registration with the silver chrome finish (VA 120-368). (*Id.* at 5.)

Tangle's theory is as pliable as its product. In claiming that all of the different Aritzia displays, which varied in number of segments and positioning, infringe all of Tangle's copyrighted sculptures, Tangle seeks to copyright a particular style. Style, no matter how creative, is an idea, and is not protectable by copyright. *See Todd v. Montana Silversmiths, Inc.*, 379 F. Supp. 2d 1110, 1113-14 (D. Colo. 2005) (rejecting "creative gestalt" or "je ne sais quoi" as basis for copyright protection); *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (rejecting argument that artistic "core" of a set of works is copyrightable). Moreover, by not including clear outer boundaries or defined elements of the allegedly protected expression, Tangle does not give the Court any concrete expression to enforce.

The Court also rejects Tangle's sweeping argument that any configuration of 17 or 18 interlocking segments of the same size and manipulable along the same axes would infringe

6

Tangle's copyrights. Only works that are "fixed" are subject to copyright protection. *See Kelley*, 635 F.3d at 305 (noting that, although a Calder mobile moves in response to air currents, "the mobile itself is obviously fixed and stable.") Tangle cannot claim ownership of every conceivable iteration of tubular sculptures made of interlocking 90-degree segments merely because its own such sculptures can be manipulated into any configuration. Instead, Tangle must allege that a specific accused work infringes upon a specific, fixed, protected work. *See, e.g.*, *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (comparing two specific disc-shaped rock displays to two allegedly infringing disc-shaped rock displays); *Hayuk*, 157 F. Supp. at 291 (holding plaintiff's claims failed "to the extent they are premised on the notion of appropriation of the 'core' of her works and are not supported by a demonstration that particular [defendant] Works are substantially similar to particular [plaintiff] Works.").

Therefore, Defendants' motion is GRANTED on this basis. Tangle claims copyright protection over an amorphous idea, effectively asking the Court to pin jelly to the wall. If Tangle chooses to replead, it needs to make clear what precisely it is alleging is subject to protection, including with reference to specific copyrighted works. The "core" of its various copyrighted works will not do.

### 2. Tangle Has Not Adequately Alleged Copying of Protected Aspects of Its Works.

The second element of a copyright infringement claim has two components: "copying" and "unlawful appropriation." *Sid & Marty Krofft TV Prods.*, 562 F.2d at 1165. A defendant may "freely copy" another's ideas and unprotectable elements. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). Plaintiff faces a low bar in alleging copying: the two works need only contain "similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 833 F.3d at 1118. "To prove unlawful appropriation, on the other hand, the similarities between the two works must be "substantial" and they must involve protected elements of the plaintiff's work." *Id.*

Works are substantially similar if they are similar under both the "extrinsic test" and "intrinsic test." *Id.* "The extrinsic test is an objective, analytical inquiry between only the

7

protectable elements of the copyrighted work and the accused work." *Kevin Barry*, 391 F. Supp. 3d at 966. The intrinsic test, on the other hand, considers the "total concept and feel" of the two works to determine if the two works are substantially similar. *Rentmeester*, 833 F.3d at 1118. Only the extrinsic test may be decided by the Court as a matter of law. *Id.* Because Tangle must succeed on both tests, dismissal is appropriate if the Court finds Tangle and Aritzia's works are not substantially similar under the extrinsic test.

### a. Step One: Protectable Elements.

Step one of the extrinsic test is to identify and "filter out" the unprotectable elements of Tangle's works. *See Rentmeester*, 833 F.3d at 1118.

Here, copyright law would not protect 90-degree curved tubular pieces or sculptures made of interlocking pieces. It would also not protect the color pink, or pink chrome. It does, however, protect the "selection, coordination, and arrangement" of 90-degree curved tubular sculptures made of eighteen interlocking pieces. *Kevin Barry*, 391 F. Supp. 3d at 967 (quoting *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019)).

### b. Step Two: Similarity Comparison.

Step two of the extrinsic test is to compare the protectable elements to the corresponding elements in the allegedly infringing works. *Rentmeester*, 833 F.3d at 1118. If the remaining elements are similar in the objective details of the works, the extrinsic test is satisfied. *Id.*

In comparing works of art, the Court considers their "'objective details in appearance,' including, but not limited to, 'the subject matter, shapes, colors, materials, and arrangement of the representations.'" *L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012). The level of similarity required in order to find "substantial similarity" differs depending on the "breadth of possible expression" of the underlying ideas. *Mattel*, 616 F.3d at 913-14. "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad'" and a lower level of similarity is required. *Id.* "If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on a blank canvas, then copyright protection is 'thin,' and a work must be 'virtually identical' to infringe." *Id.* at 914.

8

Here, the range of expression is narrow, because there are only so many ways to create tubular sculptures made of interlocking 90-degree segments, and because Tangle appears to claim protection over the entire style.[2] *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("[W]hen an idea and its expression are indistinguishable, or 'merged,' the expression will only be protected against nearly identical copying.").

The subject matter of the allegedly protected works and infringing works is the same: tubular sculptures composed of interlocking 90-degree segments. Neither Tangle nor Aritzia claims that the tubular sculptures are intended to represent any concrete object. The copyrighted works are silver chrome and white, whereas the accused works are pink chrome. The SAC does not specify the material composition of Tangle's protected works or Aritzia's sculptures, other than that the sculptures are all made of interlocking, 90-degree curved pieces which can be twisted into different poses.

Tangle provides three pictures of Aritzia displays with the SAC, but only one shows some degree of similarity to a copyrighted arrangement. Tangle compares the Zawitz Tangle Ornamental Sculpture No. V to the below Aritzia display:

 

Defendants respond that more than *de minimus* differences are apparent between the two sculptures. Defendants point to the double-loop at the bottom of the Tangle Ornamental Sculpture, as opposed to the single bottom loop in the Aritzia sculpture. They also point to the

---

[2] Although Tangle argues that the sculptures at issue "reflect infinite creative possibilities open to the sculptor," the SAC does not identify such possibilities other than not creating tubular, segmented sculptures. (Dkt. No. 43, at 13.) At oral argument, counsel for Tangle suggested that the sculptures could have been different if the proportions of the segments were different, *i.e.* if the segments were fatter or skinnier. (Dkt. No. 55, at 5.) The Court is not convinced this potential difference demonstrates a broad range of ways to make segmented tubular sculptures.

upper loop of the Tangle Ornamental Sculpture, which is bent away from the bottom loops, versus the upper loop of the Aritzia sculpture, which is bent over the bottom loop.  Defendants note that the Tangle Ornamental Sculpture measures only inches in scale, versus the Aritzia sculpture which reaches several feet into the air.  And, finally, Defendants point to the difference between the white matte color of the Tangle Ornamental Sculpture and the pink chrome color of the Aritzia sculpture.

The Court agrees with Defendants.  Because the Tangle Ornamental Sculpture No. V is entitled only to "thin" protection, the differences in arrangement of the loops, size of the sculptures, coloring, and finish are substantial.  Additionally, the Court notes that the SAC does not allege that the Aritzia sculpture is kinetic or manipulable, which seems to be an essential feature of Tangle's works.  (*See generally*, SAC).  The Aritzia sculpture does not meet the "virtually identical" standard required to find unlawful appropriation of expression.

The Court cannot engage in a more detailed comparison between the sculptures on the basis of what has been provided to it in the SAC.  Tangle does not enumerate any additional tangible elements that define the outer bounds of the protected expression in its works beyond the number of segments, the angle of the segments, and that the segments are interlocked and kinetic.  Accordingly, Tangle's copyright claim fails, and the Court GRANTS Defendants' motion on this additional basis.

C. **Tangle Has Not Plausibly Alleged Distinctive Trade Dress Infringement.**

Defendants argue that the SAC does not sufficiently define the allegedly infringed trade dress, and that it is unclear from the face of the SAC whether Tangle's trade dress is the pink chrome color or the form of tubular sculptures made of interlocking segments.  Tangle responds that the SAC alleges that "the Tangle design and distinctive pink-chrome color, alone or in combination with the sculptural features" discussed in its copyright claim is a protectable trade dress.  (Dkt. 43, at 18.)  Tangle disputes that any heightened pleading standard is required for a trade dress claim.

In order to plead a claim for trade dress infringement, a plaintiff must allege: "(1) that its claimed dress is non-functional; (2) that its claimed dress serves a source-identifying role either

because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Crafty Prods. v. Michaels Cos.*, 424 F. Supp. 3d 983, 989 (S.D. Cal. 2019). "Because trade dress claims involve intensely factual issues, 'courts in this circuit have required trade dress plaintiffs, at the very least, to provide adequate notice by including in their complaint a complete recitation of the concrete elements of their alleged trade dress.'" *YZ Prods. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 767 (N.D. Cal. 2021) (quoting *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1070 (N.D. Cal. 2015) and collecting cases).

The Court finds that Tangle has not met the "notice pleading" standard required by Rule 8. The SAC does not define Tangle's alleged trade dress with sufficient precision to give Defendants adequate notice of the basis of Tangle's trade dress claim. *See YZ Prods.*, 545 F. Supp. 3d at 767 (holding that images do not replace a list of "concrete elements that constitute the alleged trade dress"); *Crafty Prods.*, 424 F. Supp. 3d at 991-92 (holding that attaching product pictures as exhibits to a trade dress claim, while helpful, asks the Court to take on plaintiff's role in identifying "what is to be protected"). Like Defendants, the Court cannot determine from the face of the SAC whether Tangle seeks trade dress protection over "chrome pink"; segmented tubular sculptures; chrome pink segmented tubular sculptures; or some other combination of elements.

Additionally, although Defendants do not move on this basis, the Court notes that the SAC lacks well-pleaded allegations that the elements of its trade dress are non-functional, or that the trade dress is inherently distinctive or has acquired secondary meaning. Should Tangle choose to replead its trade dress claim, it should address those deficiencies.

The Court GRANTS Defendants' motion to dismiss the trade dress claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss, with leave to amend. Tangle may file an amended complaint by no later than November 8, 2023, if it can do so in good faith and in compliance with its obligations under Federal Rule of Civil Procedure 11. Defendants shall answer or otherwise respond by November 29, 2023. The parties shall appear for an initial case management conference on January 19, 2024 at 11:00 a.m., and they shall file a

11

joint case management conference statement on or before January 12, 2024.

This Order is without prejudice to Aritzia, Inc. to reassert its jurisdictional objections under Rule 12(b)(2).

**IT IS SO ORDERED.**

Dated: October 18, 2023

_____
JEFFREY S. WHITE
United States District Judge