UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANGLE INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ARITZIA LP, et al.,<br><br>        Defendants. | Case No. 23-cv-01196-JSW   (KAW)<br><br>**ORDER RE 11/7/2025 DISCOVERY LETTER**<br><br>Re: Dkt. No. 107, 112 |

Plaintiff Tangle Inc. filed the instant case against Defendant Aritzia LP and United States of Artizia, Inc. asserting that Defendants infringed on Plaintiff's copyrights of sculptures by selling, marketing, and displaying hundreds of infringing sculptures in their store fronts. (*See* Second Amend. Compl. ("SAC") ¶¶ 1-3.) On November 7, 2025, the parties filed a discovery letter concerning Defendants' ESI production.[1] (Discovery Letter, Dkt. No. 107.) On November 19, 2025, Plaintiff filed a "supplement," which was not authorized by the Court. (Pl.'s Supp., Dkt. No. 112.)

**A.   Messages**

Plaintiff seeks messages and communications outside of e-mail, such as Zoom messages, iMessages, and text messages. (Discovery Letter at 2.) Plaintiff asserts that Defendants' counsel had confirmed that "Aritzia employees 'primarily relied on non-email forms of communications,'" but that Defendants have refused to produce any such communications. (*Id.*)

Defendants dispute Plaintiff's characterization of what was stated and asserts that the

---

[1] The Court notes the footnote size is improper. (*See* N.D. Cal. Civil Local Rule 3-4(c)(2) (requiring that all written text, including footnotes, be in 12-point type or larger).) Going forward, the Court will not consider any non-compliant footnotes.

1  primary method of communication was in-person and that the secondary method of
2  communication was e-mail. (Discovery Letter at 4.) Defendants state that communications via
3  Zoom chat and text messages are the least common means of communication, and that Zoom
4  messaging was not used at all. (*Id.*)

5  Regardless of which medium was most used, Defendants have an obligation to produce all
6  responsive evidence. The fact that text messages or Zoom chat were less frequently used does not
7  make them any less responsive to Plaintiff's discovery requests. While the Court cannot order
8  Defendants to produce what does not exist, Defendants need to produce responsive messages.

9  In the alternative, Defendants argue that the burden and expense of producing "the skeleton
10 of an SMS text" is not proportional to the needs of the case. (Discovery Letter at 5.) It is unclear
11 what Defendants mean by "the skeleton" of an SMS text, and Defendants provide no explanation
12 for why this would prevent Defendants from producing the actual text messages, iMessages, or
13 other communications being requested. Thus, Defendants have failed to establish there is undue
14 burden in producing responsive communications.

15 Accordingly, the Court ORDERS Defendants to begin a rolling production of non-email
16 communications within **seven days** of the date of this order. The parties should meet and confer
17 as to the order in which individuals' communications will be reviewed and produced.

18 **B.    Search Terms**

19 Plaintiff provided search terms, which Defendants used except for nine proposed terms.
20 (Discovery Letter at 3, 5.) Plaintiff asserts that it is not clear that Defendants used searches that
21 would capture text variations (for example, whether a search for "window display" would turn up
22 references to "window display_s_") or are not case-sensitive. (*Id.* at 3.) Defendants confirm that its
23 e-Discovery tool cannot conduct wildcard searches or use special characters and Boolean
24 operators, but do not clarify whether they were able to use other searches that would capture text
25 variations or are not case-sensitive. (*Id.* at 5.)

26 Thereafter, Plaintiff filed a "supplement," complaining that Defendant had made
27 misrepresentations in the joint letter. (Pl.'s Supp. at 2.) It is unclear why Plaintiff did not address
28 these issues before filing the discovery letter (indeed, the letter was filed by Plaintiff's counsel).

1  Plaintiff generally challenges the representations made by Defendants regarding the capabilities of
2  its e-Discovery tool.  The Court STRIKES the supplement as improper.
3       In any case, the Court lacks the information needed to determine if further searches are
4  needed because Defendants have failed to explain what its search capabilities are.  It is also
5  unclear what searches Plaintiff believes would require variations.  Thus, the Court is not able to
6  determine the adequacy of the search conducted to date, whether additional searches would be
7  reasonable, and what those additional searches would entail.  Accordingly, the Court ORDERS the
8  parties to meet and confer further, during which Defendants must **fully** explain their search
9  capabilities, including whether their searches could capture text variations or were case-sensitive.
10      As to Plaintiff's complaint that Defendants have not accepted or reported hit results for
11 nine proposed terms, Plaintiff fails to identify these terms, let alone explain why these terms are
12 likely to lead to discoverable evidence.  Thus, the Court has no information to determine if those
13 nine terms should be used.

### C. Metadata

15      Finally, Plaintiff complains that Defendants' metadata field is inadequate because it
16 identifies the custodian as "ARITZIA" or is empty, rather than identify the specific individual who
17 possessed the document. (Discovery Letter at 4.)  Defendants respond that it is common practice
18 to produce non-custodial documents that way. (*Id.* at 5.)  Plaintiff, however, asserts that *every*
19 document produced by Defendants has the custodian metadata field set to Aritzia or is empty. (*Id.*
20 at 4.) Defendants are ordered to produce metadata for custodian documents that identifies the
21 specific custodian, not just "Aritzia," to the extent such information exists.
22      Plaintiff also points to Defendants' FILE_PATH metadata, which is filled in with
23 information about where the produced file is located on the production media rather than in its
24 original form and sequence. (*Id.*)  Defendants respond that they did provide metadata, but do not
25 dispute that the metadata is based on where the file was located on the production media rather
26 than its original form and sequence. (*Id.* at 5.)  Defendants provide no authority or argument that
27 producing metadata based on where the file was located on the production media is appropriate.
28 Accordingly, Defendants are ordered to produce the metadata of where the produced file was

1  located in its original form and sequence, to the extent such information exists.

**D.  Conclusion**

The Court ORDERS Defendants to begin a rolling production of non-email communications within **seven** days of the date of this order.  Additionally, Defendants are ORDERED to produce the appropriate metadata within **21 days** of the date of this order.  The parties are ORDERED to meet and confer within **ten days** of the date of this order as to the appropriateness of the searches, including whether the searches have captured text variations and whether they are case-sensitive.

This order disposes of Dkt. Nos. 107 and 112.

IT IS SO ORDERED.

Dated: December 19, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge